# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | | |
|---|---|---|
| PAXTON WILLIAMS, | * | CIVIL NO. 4:22-cv-00240-SBJ |
| Plaintiff, | * | |
| v. | * | |
| JOHN DOES 1-8, JACOB HEDLUND, TRUDY PAULSON, JEFF ROBINSON, DANA WINGERT and CITY OF DES MOINES, IOWA, | * | ORDER |
| Defendants. | * | |

## I. INTRODUCTION

This case was initiated by plaintiff Paxton Williams in state court against the City of Des Moines, Iowa and law enforcement officers employed by the Des Moines Police Department. *See* Dkt. 1-1. Defendants removed the action to this United States District Court in the Southern District of Iowa. Dkt. 1. Prior to removal, Williams filed a First Amended Petition at Law. Dkt. 1-1 pp. 26-48. Now before this Court is a Motion to Dismiss (Dkt. 2) filed by defendants City of Des Moines, Dana Wingert, Jacob Hedlund, Jeff Robinson, and Trudy Paulson. Williams filed a Resistance (Dkt. 3) to which defendants submitted a Reply (Dkt. 4).

The Court considers the motion fully submitted. Oral argument by counsel is not necessary. L.R. 7(c). For the reasons which follow, the motion is denied without prejudice.

## II. PLAINTIFF'S FIRST AMENDED PETITION AT LAW

Williams' claims against defendants arose from protest activities in downtown Des Moines, Iowa in late May and early June 2020 in the aftermath of the death of George Floyd in Minneapolis, Minnesota. As set forth in the First Amended Petition at Law, on June 1, 2020, Williams joined others marching throughout downtown Des Moines and to the Iowa State Capitol

and then, after returning home, was pepper-sprayed, tackled to the ground, and arrested. Specifically, Williams alleges, in part:

> In the early evening of June 1, 2020, Plaintiff watched a protest march from the living room window of his home at 400 E. Locust St. in Des Moines.
>
> Like many Americans, Plaintiff was aware of the racial justice protests and marches that were inspired by the murder of George Floyd in Minneapolis.
>
> Plaintiff was aware of the pepper-spraying, zip-tying, and arrest of the journalist Andrea Sahouri on May 31st.
>
> The treatment of Ms. Sahouri and reports of questionable and unlawful police tactics were among the factors that inspired Plaintiff to participate in the march on June 1, so that he could witness for himself the actions of the marchers and the law enforcement officers present.
>
> As an attorney for the State of Iowa, in September 2014 Plaintiff took an oath and solemnly swore to support the Constitution of the United States and the Constitution of the State of Iowa.
>
> Plaintiff left his home and joined the march as it headed west on Locust St.
>
> Plaintiff ran into a co-worker, a fellow attorney, during the march and the two shared that both joined the march to show support for racial justice and to observe and bear witness to the actions taking place.
>
> Plaintiff marched with the group of marchers throughout downtown Des Moines and then to the Iowa State Capitol.
>
> There were a number of individuals associated with the protest who spoke at the Capitol to the crowd of marchers.
>
> The protest at the Capitol was overwhelmingly peaceful.
>
> Plaintiff recalls the protest speakers and members of the protest crowd loudly and fully condemning the one instance of someone from the protest crowd throwing a water bottle from the back of the crowd towards the law enforcement officers lined along the Capitol.
>
> Without warning, Plaintiff observed law enforcement officers become aggressive without cause and engage in reckless, harmful, and unconstitutional activity.
>
> Law enforcement officers at the Capitol intentionally used force on peaceful protestors with no lawful justification.

Law enforcement officers at the Capitol knowingly placed protesters in physical danger through indiscriminate use of excessive force.

Plaintiff saw individuals hit by flashbangs, the use of tear gas, and/or other weapons fired indiscriminately into the crowd by law enforcement, and towards people who were only peacefully protesting and attempting to get out of harm's way.

Plaintiff watched law enforcement officers run towards and push bicyclists who were trying to leave the area of the Capitol off of their bikes.

Not only did this excessive use of force injure many protestors, journalists, and bystanders, it also chilled individuals from exercising their First Amendment rights and suppressed speech.

Plaintiff was shocked that law enforcement officers would instigate such violence and escalate it by chasing after individuals, using tear-gas, rubber-bullets, pepper-spray, and tackling, arresting or otherwise detaining individuals who had simply been excising their Iowa and federal constitutional rights.

Plaintiff and his work colleague ran, like many, from the bedlam and violence caused by the actions of law enforcement, afraid for their well-being, but stopped briefly to inquire about, and assist if necessary, an individual who had been injured by some projectile fired into the crowd by law enforcement.

Plaintiff returned safely to his home, and from the entryway of his courtyard watched as throngs of protesters from the Capitol made their way west on Locust Street.

Plaintiff saw many injured people pass him by, and as law enforcement grew closer saw many people running as if in fear for their lives.

Plaintiff noticed that members of the media who had been filming the group also started running as the law enforcement officers grew closer.

Plaintiff was alone when the law enforcement officers, dressed in riot gear, approached the sidewalk near the entryway to Plaintiff's home.

Plaintiff was clearly engaged in no other activity other than excising his rights of free speech under the Iowa and federal constitutions when the law enforcement officers approached.

Plaintiff did not try to escape, nor was he given any opportunity to access the gate several feet away to return inside his residence.

Defendant Law enforcement officers did not issue any order to disperse.

Defendant Law enforcement officers did not ask Plaintiff to return inside.

>Defendant Law enforcement officers did not inquire if Plaintiff lived at the address of the attack.
>
>Defendant Law enforcement officers, including Defendant Jacob Hedlund, ran towards Plaintiff, pepper-sprayed him (or sprayed him with whatever harmful chemical it is they had), and they forcefully tackled Plaintiff to the ground.
>
>Plaintiff was never given a chance to submit to arrest and avoid being sprayed and tackled, had he chosen to do so.
>
>Defendant Law enforcement officers, including Defendant Jacob Hedlund, used so much pepper spray (or whatever harmful chemical they used) that Plaintiff could not open his eyes during the ride to wherever he was first processed.
>
>Plaintiff feared for his life when he was pepper-sprayed and brutally tackled without warning.
>
>The handcuffs or zip-ties placed on Plaintiff were put so tight as to cause pain throughout the time they were on.
>
>Plaintiff further feared for his life when he was placed into the back of an empty police van/wagon. With no other individuals in the wagon, Plaintiff remembered the tragedy of Freddie Gray in Baltimore, who suffered fatal injuries while being transported in a police van.
>
>At the first processing site, Plaintiff had to see the medic there to rinse out his eyes as the pepper-spray used was still causing considerable pain.
>
>Plaintiff had no notice of what the law enforcement officers were going to do when they used such excessive and unwarranted force.
>
>Plaintiff was arrested and issued a citation for failure to disperse.
>
>Plaintiff was transported to Polk County Jail and was forced to spend the night incarcerated.
>
>Plaintiff was not allowed a telephone call.
>
>Plaintiff continued to feel the effects of the pepper-spray at the jail and for several days following.
>
>Plaintiff suffered shoulder, arm, and hip pain, and various other aches and pains, as a result of being tackled.
>
>Plaintiff was in jail until he was bailed out Tuesday late morning.

*Id*. ¶¶ 14-55. Williams further alleges, in part, as to events which occurred after his release from

jail:

>Plaintiff filed a complaint online with the Des Moines Police Department for bias policing, inappropriate use of force, and violation of civil rights on June 4, 2020.
>
>Plaintiff received a telephone call from Defendant Robinson within five hours of Williams' filing on June 4, 2020.
>
>Defendant Robinson informed Plaintiff in that conversation that he had reviewed the police camera footage and that it had refuted everything in Plaintiff's claim.
>
>Plaintiff was surprised by how quick the telephone call came, and he wondered how anyone could see the footage and come to that conclusion Defendant Robinson shared, as clearly the footage could not refute everything in the claim—that Plaintiff was alone when he was arrested, that he was at his residence, or that there was no "order to disperse" given.
>
>Plaintiff soon recognized that Defendant Robinson was not a neutral party concerned with assessing the situation, but that he was engaging in intimidation as an attempt to stop Plaintiff from pursuing the matter further.

*Id.* ¶¶ 59-63.

Williams named as defendants the City of Des Moines, and Jacob Hedlund, Trudy Paulson, and Jeff Robinson who are believed to be employed as law enforcement officers with the Des Moines Police Department, and Dana Wingert who is believed to be employed as the Chief of Police with the Des Moines Police Department, and unidentified John Does 1-8 who are believed to be employed as law enforcement officers with the Des Moines Police Department. *Id.* ¶¶ 2-7. It is indicated Williams will amend the complaint to allege the names of John Does 1-8 when ascertained. *Id.* ¶ 2.

Williams asserts multiple causes of action. Counts 1 and 2 assert claims of illegal seizure against "all defendants" in violation of the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution. Counts 3 and 4 assert claims of excessive force against "all defendants" in violation of the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution. Counts 5 and 6 assert claims of retaliation against

jail:

> Plaintiff filed a complaint online with the Des Moines Police Department for bias policing, inappropriate use of force, and violation of civil rights on June 4, 2020.
>
> Plaintiff received a telephone call from Defendant Robinson within five hours of Williams' filing on June 4, 2020.
>
> Defendant Robinson informed Plaintiff in that conversation that he had reviewed the police camera footage and that it had refuted everything in Plaintiff's claim.
>
> Plaintiff was surprised by how quick the telephone call came, and he wondered how anyone could see the footage and come to that conclusion Defendant Robinson shared, as clearly the footage could not refute everything in the claim—that Plaintiff was alone when he was arrested, that he was at his residence, or that there was no "order to disperse" given.
>
> Plaintiff soon recognized that Defendant Robinson was not a neutral party concerned with assessing the situation, but that he was engaging in intimidation as an attempt to stop Plaintiff from pursuing the matter further.

*Id.* ¶¶ 59-63.

Williams named as defendants the City of Des Moines, and Jacob Hedlund, Trudy Paulson, and Jeff Robinson who are believed to be employed as law enforcement officers with the Des Moines Police Department, and Dana Wingert who is believed to be employed as the Chief of Police with the Des Moines Police Department, and unidentified John Does 1-8 who are believed to be employed as law enforcement officers with the Des Moines Police Department. *Id.* ¶¶ 2-7. It is indicated Williams will amend the complaint to allege the names of John Does 1-8 when ascertained. *Id.* ¶ 2.

Williams asserts multiple causes of action. Counts 1 and 2 assert claims of illegal seizure against "all defendants" in violation of the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution. Counts 3 and 4 assert claims of excessive force against "all defendants" in violation of the Fourth Amendment to the United States Constitution and Article I, section 8 of the Iowa Constitution. Counts 5 and 6 assert claims of retaliation against

"all defendants" in violation of the First Amendment to the United States Constitution and Article I, section 7 of the Iowa Constitution. Counts 7 and 8 assert claims of deliberately indifferent policies, practices, customs, training and supervision against defendant Dana Wingert and the City of Des Moines in violation of the United States Constitution and the Iowa Constitution. Count 9 asserts claims of conspiracy against "all defendants" in violation of the United States Constitution. Count 10 asserts state law claims of intentional infliction of emotional distress against "all defendants." Count 11 asserts state law claims of false arrest/imprisonment against "all defendants." Count 12 asserts state law claims of malicious prosecution against "all defendants." Count 13 asserts state law claims of assault and battery against "all defendants."

### III. DEFENDANTS' MOTION TO DISMISS

In the motion before the Court, defendants contend the following counts in the First Amended Petition at Law should be dismissed: Count 1, 2, 3 and 4 against Trudy Paulson, Jeff Robinson, and Dana Wingert; Counts 5, 6 and 9 against Trudy Paulson and Dana Wingert; Count 10 against Dana Wingert; and Counts 11, 12 and 13 against Jeff Robinson and Dana Wingert. Dkt. 2 ¶ 1. In the view of defendants, each of those counts "would require the individuals to have engaged in conduct toward Mr. Williams that the First Amended Petition fails to allege." *Id.* ¶ 2. Defendants assert those claims should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* Defendants further assert the state claims in counts 2, 4, 6, and 10 thru 13 should be dismissed with prejudice pursuant to Iowa Code section 670.4A(3). *Id.* ¶ 3.

In a supporting brief, defendants emphasize the First Amended Petition at Law contains few factual allegations regarding Trudy Paulson and argue "[t]he most that can be said for counts 1-6 and 9 against Officer Paulson is that they raise speculative claims based on conclusory allegations." Dkt. 2-1 p. 4. They further argue "a number of the claims brought by Mr. Williams

6

have no applicability" to Jeff Robinson especially as to events which occurred June 1, 2020 involving Williams' arrest. *Id.* p. 4. And regarding Dana Wingert, defendants emphasize "[t]here is no allegation that Chief Wingert had any personal interaction with Mr. Williams either in person or by communication." *Id.* p. 5.

In resistance, Williams contends all the claims that defendants seek to dismiss have been properly pled and state a claim upon which relief can be granted. Dkt. 3 ¶ 3. Williams further asserts the state law claims comply with Iowa Code section 670.4A(3). *Id.* ¶¶ 4-5. In a supporting brief, Williams argues the First Amended Petition at Law provides fair notice of each claim as required by the Federal Rules of Civil Procedure. Dkt. 3-1 p. 3. Williams notes "more than 50 facts" have been pled and "incorporated into every count in his 23 page, 173 paragraph petition." *Id.* pp. 3-4. It is further noted the moving defendants are specifically named and referred to collectively as "law enforcement officers." *Id.* p. 4. In the view of Williams, "[g]iven the petition is the initial phase of litigation with no discovery having occurred, . . . the allegations in the Complaint are particularly pleaded and, if accepted as true, as required in considering motions to dismiss, would certainly support a facially plausible claim." *Id.* p. 4. In addition, as related to the state claims, Williams argues he "has met his burden of pleading that the law was clearly established at the time of the alleged violation in his petition and stated with particularity the circumstances constituting the violation as required in Iowa Code section 670.4A(3)." *Id.* p. 8.

In reply, defendants emphasize there is no allegation in the general factual allegations or in the asserted causes of action that Dana Wingert, Jeff Robinson, or Trudy Paulson were personally present to arrest Williams or use force upon him. Dkt. 4 p. 1. Defendants maintain that references to "law enforcement officers" in general fail to provide those individually named defendants notice of their alleged illegal acts and fail to state plausible claims against them. *Id.* p. 2. Defendants also reassert the Iowa state claims fail to meet the higher pleading standard of

particularity required by Iowa Code section 670.4A(3). *Id.* pp. 2-3.

### IV. COURT'S DECISION

Before addressing the issues raised by the parties, the Court notes defendants' motion did not seek dismissal of all claims. The claims against defendant Jacob Hedlund, and Counts 7 and 8 against defendant Dana Wingert and the City of Des Moines, were not challenged. As a result, a scheduling order and discovery plan (Dkt. 10) was entered and, presumably, the parties have engaged in discovery while defendants' motion has been pending before the Court.

Turning to the merits of the motion, in the opinion of the Court, both sides make valid points as to the allegations and claims set forth in the First Amended Petition at Law. From the Court's reading, the alleged facts as a whole are not lacking in detail and, if accepted as true, the claims appear to be plausible as far as stating recognizable legal causes of actions in general. But there is a lack of clarity and specificity as to alleged acts of Trudy Paulson, Jeff Robinson, and Dana Wingert in connection to certain causes of action. Ultimately, the Court concludes there are insufficient grounds to dismiss the claims as urged by defendants. However, Williams must file an amended complaint which clarifies and specifies the alleged acts of the individually named defendants in connection to each cause of action.

Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). According to the Eighth Circuit, "[t]he essential function of a complaint . . . is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Hopkins v. Saunders,* 199 F.3d 968, 973 (8th Cir. 1999) (quoting *Redland Ins. Co. v. Shelter Gen. Ins. Cos.,* 121 F.3d 443, 446 (8th Cir. 1997))). A complaint may be dismissed under Rule 12(b)(6) for the "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Id.* (internal citations omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*; *see also, e.g.*, *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512, 516 (8th Cir. 2018) (applying standards set forth in *Iqbal* and *Twombly*); *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927-28 (8th Cir. 2017) (same); *Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (same).

"[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th

Cir. 2009). The complainant "is entitled to the benefit of all reasonable inferences that may be drawn from the complaint's allegations." *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (citing *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014)). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In the Court's opinion, and in general, the First Amended Petition at Law contains "short and plain" statements of claims showing Williams is entitled to relief under cognizable causes of action "plausible on its face." And it certainly gives defendants "fair notice of the nature and basis or grounds for" the claims "and a general indication of the type of litigation involved." Williams provides a fairly detailed account of the factual events at issue. But there is lack of clarity and specificity as to alleged acts of Trudy Paulson, Jeff Robinson, and Dana Wingert in connection to the causes of action challenged by defendants. The broad assertion of certain counts against "all defendants" and collective references therein to "law enforcement officers" creates uncertainty as to the specific alleged violative actions of Paulson, Robinson, and Wingert. It is questionable on the face of the First Amended Petition at Law whether those three individuals were personally involved in all the alleged actions of "law enforcement officers" under each count asserted against "all defendants."

In that regard, Williams' claims under the United States Constitution are brought pursuant to 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "'Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association.'" *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (quoting *Smith v. City of Minneapolis,* 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted)). Accordingly, "'a plaintiff must show each individual defendant's personal involvement in the alleged violation.'" *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 344 (8th Cir. 2023) (quoting *White v. Jackson*, 865 F.3d 1064, 1080-81 (8th Cir. 2017)).

After consideration, the Court does not find sufficient grounds to dismiss the challenged claims in the First Amended Petition at Law. However, to provide fair notice to Paulson, Robinson, and Wingert, and clarity for all parties and this Court proceeding forward, Williams must file an amended complaint which cures the lack of specificity as to alleged acts of the personal involvement of Paulson, Robinson, and Wingert in the alleged violations. Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rules of procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Doing so here, under the particular procedural posture and progression of this litigation, the filing of an amended complaint by Williams serves the just, speedy, and inexpensive determination of this case.

The outcome reached by this Court applies equally to the claims asserted by Williams under state law. Under Iowa Code section 670.4A(3), a plaintiff who brings a claim against a municipality and its employees for tort liability "must state with particularity the circumstances constituting the violation and that the law was clearly established at the time of the alleged

violation. Failure to plead a plausible violation or failure to plead that the law was clearly established at the time of the alleged violation shall result in dismissal with prejudice." Iowa Code § 670.4A(3). This Court's determination to allow Williams an opportunity to amend his claims, as opposed to dismissal, is consistent with the opinion of the Iowa Supreme Court in the relatively recent decision *Victoriano v. City of Waterloo*, 984 N.W.2d 178 (Iowa 2023) entered after the parties' submissions in this case.

In *Victoriano*, the Iowa Supreme Court held the district court erred in dismissing the case with prejudice pursuant to Iowa Code section 670.4A(3) after the plaintiff had already voluntarily dismissed his case without prejudice. *Id.* at 180-84. The Court determined section 670.4A did not preclude "the plaintiff from exercising his well-established right to dismiss his petition once without prejudice" under Iowa rules of civil procedure. *Id.* at 182. The Iowa Supreme Court's reasoning is instructive as to this Court's decision in this matter:

> The text of section 670.4A expresses no intent to abrogate rule 1.943 or our longstanding precedents, nor does the text make such a conclusion inescapable. On the contrary, the statute incorporates existing law regarding pleading practice and procedure. The statute requires dismissal with prejudice only upon "[f]ailure to plead" a plausible violation of law or the law was clearly established at the time of the alleged violation. Iowa Code § 670.4A(3). The statutory reference to pleading has legal consequence. The term "pleading" is a term of art defined and governed by the rules of civil procedure. *See generally* Iowa Rs. Civ. P. 1.401–1.423. A petition is an allowable pleading. *See id.* r. 1.401. "The form and sufficiency of all pleadings shall be determined by the[ ] rules [of civil procedure] ...." *Id.* r. 1.402(1). *The rules defining and governing pleadings allow for correcting, recasting, and amending pleadings. See id.* r. 1.402(3)–(4). In addition, rule 1.943 allows for voluntary dismissal of the plaintiff's petition without prejudice once as a matter of right. *Id.* r. 1.943. The statutory phrase "failure to plead" incorporates both the rules of civil procedure governing pleading and our precedents interpreting the same, including the long-established rule that a plaintiff has the right to dismiss the petition without prejudice once as a matter of right.

*Id.* (emphasis added). The Iowa Supreme Court rejected defendants' argument the word "shall" in section 670.4A required the district court to rule on their motion to dismiss and preclude plaintiff from dismissing his suit without prejudice prior to that ruling:

> The word "shall" limits the dispositions available to the district court, i.e., when ruling on a motion to dismiss, the district court must dismiss the case as opposed to allowing the defective pleading to stand and must do so "with prejudice." *Id.* The word "shall" in no way limits the plaintiff's long-established pleading rights.

*Id.* The Iowa Supreme Court further reasoned:

> Depriving a plaintiff of an opportunity to establish a viable claim against government officials pursuant to long-established pleading rules undermines the ability to hold public officials accountable when they exercise power irresponsibly. Conversely, honoring a plaintiff's right to dismiss a petition once as a matter of right pursuant to the rules of civil procedure does not deprive government officials of the shield of immunity when they perform their duties reasonably. Government officials will still be able to test the sufficiency of the plaintiff's pleading once the plaintiff has put the pleading into its final and best form, and government officials will still be able to do so at the motion to dismiss stage prior to any litigation-related disruption of government services. To the extent these officials are concerned about stale claims or gamesmanship, the statute of limitations still applies. In addition, other pleading rules prevent the plaintiff from engaging in bad faith or other dilatory conduct facilitating undue delay in perfecting a petition.
>
> Although not dispositive of the issue, we note the State, as amicus, supports the plaintiff's interpretation of the statute. The State agrees with the plaintiff that "the [qualified immunity] statute's text doesn't limit a plaintiff's intermediate ability to amend or voluntarily dismiss and refile to attempt to cure pleading defects before a court rules on the petition's compliance with section 670.4A(3)." The State also agrees that government officials suffer no cognizable prejudice by allowing plaintiffs to amend or refile in accord with the rules because "[s]eeking dismissal under 670.4A(3) is just as available to the City upon receipt of an amended or refiled petition as it is upon receipt of an initial petition." As discussed above, we agree with the plaintiff and amicus regarding the interpretation and construction of the statute.
>
> In sum, Iowa Code section 670.4A(3) does not require the plaintiff to break the huddle and line up in final formation. Instead, the statute allows the same presnap motion and routines we have long recognized. The plaintiff can bring players across the formation, shift them, call an audible at the line of scrimmage, or even take a timeout under our long-established rules governing amendment, repleading, and dismissal. At some point, however, the plaintiff must call a play and line up in a final, legal formation before the ball is snapped. That is the point at which the district court, on motion, must adjudge the sufficiency of the pleading.

*Id.* at 183.

As in *Victoriano*, this Court will allow Williams an opportunity to cure pleading defects before adjudging the sufficiency of the pleadings determinatively as to the individual defendants

Trudy Paulson, Jeff Robinson, and Dana Wingert under the counts challenged by defendants. And those "[g]overnment officials will still be able to test the sufficiency of the plaintiff's pleading once the plaintiff has put the pleading into its final and best form." *Id.* at 183. In the same regard, the Court also directs Williams to include within the amended complaint the identity of any John Does if ascertained along with specific factual allegations of their personal involvement in the alleged violations.

## V. CONCLUSION AND ORDER

For those reasons, the Motion to Dismiss (Dkt. 2) is denied without prejudice. Plaintiff Paxton Williams shall file an amended complaint in compliance with the Court's directives and must do so no later than April 14, 2023.

IT IS SO ORDERED.

Dated March 31, 2023.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE