UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

---

| | |
|---|---|
| PAXTON WILLIAMS,<br>    Plaintiff,<br>vs.<br><br>JOHN DOES 1-8, JACOB HEDLUND, &<br>TRUDY PAULSON, individually and in their<br>official capacity as law enforcement officers<br>for the Des Moines, Iowa Police Department;<br>Sergeant JEFF ROBINSON, individually and<br>in his official capacity as a law enforcement<br>officer for the Des Moines, Iowa Police<br>Department; DANA WINGERT, individually<br>and in his official capacity as Chief of Police for<br>the Des Moines, Iowa Police Department;<br>CITY OF DES MOINES, IOWA,<br>    Defendants. | Case No. 4:22-CV-00240-SBJ<br><br><br>BRIEF IN SUPPORT OF<br>RESISTANCE TO MOTION FOR<br>SUMMARY JUDGMENT |

---

**COMES NOW** the Plaintiff, Paxton Williams, and submits the following brief in support of Plaintiff's Resistance to Defendants' Motion for Summary Judgment.

## TABLE OF CONTENTS

I.     INTRODUCTION………………………………………………………….…..3

II.    STATEMENT OF DISPUTED FACTS…………………………………………3

III.   SUMMARY JUDGMENT STANDARD………………………..…………….6

IV.   ARGUMENT……………………………………………………………………...6

    A.  THERE WAS NO PROBABLE CAUSE TO ARREST PAXTON
        WILLIAMS FOR FAILURE TO DISPERSE…………………………………6

    B.  THERE WAS NO PROBABLE CAUSE WILLIAMS WAS VIOLATING
        THE CURFEW ORDER AND HE WAS NOT ARRESTED FOR
        VIOLATING THE ORDER ……………………………………..………………7

    C.  OFFICER PAULSON WAS NOT REASONABLY RELYING UPON THE
        ARREST BY OFFICER HEDLUND …………………….……………………9

    D. **COUNT 11, THE FALSE ARREST AND IMPRISONMENT CLAIM IS SUPPORTED BY SUFFICIENT FACTS…………………………..……….9**

    E. **THE USE OF FORCE AGAINST PAXTON WILLIAMS WAS NOT REASONABLE………………………………………………………………10**

    F. **THE USE OF FORCE AGAINST PAXTON WILLIAMS VIOLATED IOWA LAW AND IS ASSAULT AND BATTERY………………...……..11**

    G. **THE MALICIOUS PROSECUTION CLAIM RETAINS QUESTIONS OF FACT BECAUSE THERE WAS NO PROBABLE CAUSE AND THERE IS EVIDENCE OF MALICE…………………………………………………..11**

    H. **THERE IS A MATERIAL QUESTION OF FACT WHETHER DEFENDANTS RETALIATED AGAINST WILLIAMS AND WHETHER THERE WAS A CONSPIRACY BY THE CITY OF DES MOINES AND THE OTHER DEFENDANTS TO RETALIATE AGAINST HIM…..……12**

    I. **THERE IS A MATERIAL QUESTION OF FACT ON WHETHER DEFENDANTS ENGAGED IN OUTRAGEOUS CONDUCT……..……14**

    J. **THERE ARE SEVERAL CLEARLY ESTABLISHED RIGHTS THAT WERE VIOLATED, AND OFFICER HEDLUND WAS THEN PROMOTED, GENERATING *MONELL* LIABILITY……………………15**

    K. **OFFICER HEDLUND IS NOT IMMUNE FROM LIABILITY BECAUSE HIS TORTS DID NOT HAPPEN DURING ANY "EMERGENCY"…….16**

  V. **CONCLUSION………………………………………………………………16**

## I. INTRODUCTION.

The Court should deny summary judgment to the Defendants on the federal constitutional claims, and the tort claims in Counts 1, 3, 5, 7, 9, 10, 11, 12 and 13. Plaintiff agrees that the Court should dismiss the state constitutional claims in counts 2, 4, 6 and 8 pursuant to the Iowa Supreme Court's recent opinion in *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023). Plaintiff further consents to dismissal of the unnamed John Does 1-8. Plaintiff submits that material facts are in dispute rendering summary judgment on Counts 1, 3, 5, 7, 9, 10, 11, 12 and 13 inappropriate, and submits that these counts be tried to a jury.

## II. STATEMENT OF DISPUTED FACTS.

There are several material facts in dispute in this case that render summary judgment inappropriate. *See Plaintiff's Statement of Additional Disputed Material Facts ("PSADM") and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("PRDSUMF").* Paxton Williams submits that he was exercising his First Amendment rights by attending a march in Des Moines on June 1, 2020 to show his support for racial justice and to observe and bear witness to actions taking place by law enforcement and protestors. (PSADM ¶6). At the time, Williams was an Assistant Attorney General for the State of Iowa, and had taken an oath to support the Constitution of the United States. (PSADM ¶3). He was wearing a mask and glasses during the mask because of COVID. (PSADM ¶4). Williams observed law enforcement become aggressive without cause and engage in unconstitutional activity directed at innocent and peaceful protestors. (PSADM ¶9-15).

After leaving the Capitol as law enforcement had requested, Williams was subsequently assaulted, sprayed with chemicals into his eyes, and subjected to unconstitutional excessive force and illegal arrest by Officer Jacob Hedlund while he stood alone in front of his home. (PSADM

¶29-50).  Prior to the assault and arrest, Williams had complied with officers' demands to "move" by backing up away from them further into the vestibule in front of his home and had informed them he was at his home.  (PSADM ¶21-36).  Williams had committed no crimes and there was no probable cause to arrest him.  (PSADM ¶36-47).  On June 1, 2020, when Williams asked Officer Hedlund why he was arrested, Hedlund said it was for "running his mouth" and nothing more.  (PRDSUMF ¶8).  Defendant Hedlund later claimed under oath both that Williams refused to move when directed to do so, and then also claimed that Williams was arrested while "running away."  (PSADM ¶83).

Williams was then charged with the crime of "failure to disperse" by Defendant Trudy Paulson.  (PSADM ¶ 78-79).  The vast majority of the "facts" in that complaint were false.  (PSADM ¶78-79).  Paulson was not present for Williams's arrest.  (PSADM ¶78-79).  Paulson did not speak with arresting officer Defendant Hedlund prior to filing the criminal complaint, in violation of normal protocols.  (PSADM 78).  The false statements Paulson put in the criminal complaint were directly contradicted by police reports, body camera footage, and Defendant Hedlund's own statements about what had happened on June 1, 2020.   (PSADM 80).  Defendant Hedlund knew the statements in the criminal complaint against Williams were false, but did nothing to fix them, even though he was the arresting officer.  (PSADM 81).  Meanwhile, Defendant Hedlund put in his own report that Williams's criminal offenses should be classified as "riotting" even though he knew that Paxton Williams had not engaged in anything close to rioting.  (PSADM 81-82).

Williams complained about the force used in his arrest to the Des Moines Police Department, and everything he put in his complaint was true and supported by the body camera footage of Defendant Hedlund.  (PSAMF ¶52).  Yet when he received the complaint, Defendant

Robinson called Wiliams in an attempt to intimidate him into withdrawing the complaint. (PSAMG ¶53). It is heavily disputed what was, and was not said, on that phone call. Williams submits that Sergeant Robinson was not truthful with Williams on that phone call because he stated that "nothing" in the complaint that Williams had filed was true and that it was all "refuted" by the body camera footage. (PSAMF ¶54). Sgt. Robinson admitted he normally recorded these types of calls, but conveniently could not remember or find the recording of this one. (PSAMF ¶ 87).

Meanwhile, Defendant Hedlund and other employees and supervisors at the Des Moines Police Department began a multiple year quest to further retaliate against Williams specifically by trying to target his good standing as a member of the Iowa Bar. (PSAMF ¶63-72). This plan, and some of these attempts, were captured by text message. (PSAMF ¶63-72). In these text messages, the Des Moines Police Department's public information officer Paul Parizek called Williams a "pussy" and a "jackass," and said that he "just had a convo with a buddy who has a connection to the Iowa Bar Assoc." about Williams. (PSAMF ¶66). Defendant Hedlund also specifically tried to get a former city attorney who was in a new position to "take away" individuals' "right to practice law" to give him insider information about Paxton Williams. (PSAMF ¶69-70).

An independent expert has determined that the force inflicted against Williams by Hedlund was not warranted, was excessive and unnecessary, and violated professional standards, policies, the law, and training. (PSAMF ¶75). The expert also determined that the prolonged pursuit of the criminal charges worked to chill Williams' desire to protest and have his voice heard. (PSAMF ¶75). The expert also determined that even if Williams had been given a lawful and reasonable order to disperse (which he had not been), the force inflicted upon him was

5

excessive and unnecessary and in violation of his Constitutional rights. (PSAMF ¶ 76). The expert further opened that Williams was not resisting, not engaged in criminal conduct, and was instead standing alone at the entry to his residence, and there was nothing that necessitated any use of chemical agents against him. (PSAMF ¶77).

### III. SUMMARY JUDGMENT STANDARD.

Federal Rule of Civil Procedure 56(a) allows summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is only proper when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows there is no genuine issue of material fact remaining. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff must also designate specific facts that create a triable controversy. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004).

### IV. ARGUMENT.

#### A. THERE WAS NO PROBABLE CAUSE TO ARREST PAXTON WILLIAMS FOR FAILURE TO DISPERSE.

Defendants claim that there was probable cause to arrest Williams for failing to disperse. But, Plaintiff has demonstrated that Williams *did* disperse from the Capitol, was not given an additional order to disperse when he stood alone in front of his home, and did actually "move" when ordered to "move." There was no probable cause to arrest for failure to disperse.

The criminal complaint for failure to disperse was intentionally false, written by someone who was not present, and the false statements in it were not fixed by Officer Hedlund even when he knew they was false. Officer Hedlund said on June 1, 2020 that the arrest was for Williams "running his mouth," not for failing to disperse. And, even by the time of his deposition, Officer

6

Hedlund testified that the arrest was because Williams was "clearly agitated," not because he failed to disperse. The false statements made subsequently by the officers in this case demonstrate that they were trying to cover up for an illegal arrest once they discovered Paxton Williams was a licensed attorney working for the state of Iowa.

At the time of Williams's arrest it was clearly established that there must be probable cause for an arrest under the Fourth Amendment. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). It was also clearly established that someone cannot be arrested for expressing their First Amendment rights. *Id.* But, Officer Hedlund admits in his own recording that the arrest was made for Williams's "mouth", a/k/a, for expressing his First Amendment rights.

Because the arrest was in direct violation of Williams's clearly established rights under the Fourth and First Amendments, Officer Hedlund is not entitled to qualified immunity on this ground.

**B. THERE WAS NO PROBALE CAUSE WILLIAMS WAS VIOLATING THE CURFEW ORDER AND HE WAS NOT ARRESTED FOR VIOLATING THE ORDER.**

Defendants claim that there was probable cause to arrest Williams for violating the curfew order, even if that wasn't ever a reason given by the officers for his arrest. And, in so doing, Defendants cite an unpublished district court case out of this district with facts demonstrably different from the facts here. (R. Doc. 31, p. 11). But, not only was *Luong v. House*, No. 4:21-cv-00214 (Iowa SD Apr. 11, 2023) wrongly decided, it also is easily distinguishable from the facts presented here.

It is clear, here, that Williams was not arrested for a curfew violation. (PSAMF ¶86). Defendant Hedlund has not ever even claimed that he was contemplating arresting Williams, or anyone else, for a curfew violation. Instead, the Defendants' argument is only that if Williams

7

could have been arrested for the curfew violation, that gives Hedlund qualified immunity. Plaintiff disagrees.

It is a disputed fact whether Williams was "on a sidewalk in front of a building" as submitted by Defendants. In fact, Williams was alone, in front of his *home*, in a vestibule, enclosed on three sides in a fenced in area. (PSUMF ¶21, 84). This fact alone distinguishes this case from the Defendant Hedlund admitted that he was in the fenced in area at the time of his arrest. (PSAMF ¶84). It is a disputed fact *when* officers knew it was Williams' home – when he said it on video and gestured to his home prior to his arrest – or when he said it aloud immediately after being sprayed and arrested.

The court must consider the impact of the false statements subsequently made by Officer Hedlund and Officer Paulson after the arrest. Officer Hedlund tried to wrongly state the address of the arrest, indicating a conscious knowledge that he *couldn't* arrest Williams at his home for any offense. (RDSUMF ¶ 99). It is also material that the criminal complaint was full of so many falsities that even Officer Hedlund in his deposition had to admit that the statements were absolutely false as applied to Williams. (PSAMF ¶ 78-81). Defendant Hedlund then drafted his own supplemental report that indicated he was arresting Williams for "rioting" even though he knew Williams had not engaged in any sort of rioting activity. (PSAMF ¶82).

All of these facts indicate that there was not probable cause to arrest Williams for violation of the curfew, and in fact officers knew he was at his home at the time they arrested him. Instead, they fabricated information in the charging documents, and then tried to retaliate against Williams's law degree. Fabricating evidence to secure an arrest is in and of itself a constitutional violation, and clearly established. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). "Officers who knowingly lie are not protected by qualified immunity."

*Smalls v. City of New York*, 181 F.Supp.3d 178, 189 (E. Dist. NY Feb. 22, 2016). Williams's arrest alone was unconstitutional, in violation of clearly established rights. The subsequent falsities by multiple officers further supports the ultimate finding that no qualified immunity should be given in this case.

### C. OFFICER PAULSON WAS NOT REASONABLY RELYING UPON THE ARREST BY OFFICER HEDLUND.

Defendants claim that Officer Paulson is entitled to qualified immunity because she was entitled to rely on the arrest information from Officer Hedlund. (R. Doc. 31, p. 17.) The main problem with Defendants' argument, however, is that even Officer Hedlund has testified that Officer Paulson was *not* relying on him when she fabricated evidence in a criminal complaint against Williams. (PSAMF ¶78-81). In fact, Officer Hedlund disclaimed all knowledge about how she came to put the false statements into the complaint because he never even spoke to her before the complaint was filed. (PSAMF ¶78). The false statements are also clearly contradictory to the arresting officer's reports, and body camera footage. Paulson is not protected for her intentional false statements. *See Smalls v. City of New York*, 181 F.Supp.3d 178, 189 (E. Dist. NY Feb. 22, 2016).

### D. COUNT 11, THE FALSE ARREST AND IMPRISONMENT CLAIM IS SUPPORTED BY SUFFICIENT FACTS.

Because there was no probable cause to arrest Mr. Williams, as detailed above, the tort of false arrest and imprisonment pled in count 11 also survives summary judgment. This is even more clear after the Iowa Supreme Court detailed how officers could be held civilly liable under state torts, just not under independent actions under the Iowa constitution in *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023). The court stated "common law claims against local law enforcement were widely recognized" before the Iowa Constitution was passed, and inferred that

going forward torts perpetuated against citizens like "false arrest" should be prosecuted as torts. *See id. at 299.*

### E. THE USE OF FORCE AGAINST PAXTON WILLIAMS WAS NOT REASONABLE.

Defendants claim that the use of force against Paxton Williams was reasonable. But, in so arguing, Defendants set forth the factors to be considered, including whether he is actively resisting arrest, attempting to evade arrest by flight, are violent and dangerous, the duration of the action, whether the suspect is armed, where the action takes place, and the number of persons the officer must deal with at that moment in time. (R. Doc. 31, p. 20). Each one of these factors weighs in favor of Williams. Williams was alone in front of his home when he was attacked by law enforcement officers who had absolutely no need to spray him in the face with a painful chemical. He did not run. He was not dangerous or violent or armed. He was subdued in seconds. He did not resist. He complied with law enforcement. His only offense was being a lawyer, and the police felt the need to continue to persecute him, and lie about him, and try to disbar him, all because he dared to stand up for racial justice in his city.

At the very least, there is a material fact in dispute about whether Williams was refusing to comply with the order to move (as argued by the Defendants at one point in their briefing) or whether he was actually running from the police evading arrest (as argued by Defendants in other points of their briefing and materials).

And, while Defendants cite their expert in their briefing, notably they don't even try to claim that his opinions are undisputed facts. Plaintiff's expert, Roger Clark, has opined,

> Mr. Williams offered no resistance whatsoever. He was not engaged in criminal conduct, he was simply standing alone at the entry to his residence. He was willing to comply with every verbal order. In particular, I saw nothing in the record to necessitate any use of impact munitions or physical force or chemical agents on Mr. Williams.

(PSAMF ¶77). This at the very least creates a material question of fact, preventing summary judgment on Plaintiff's Fourth Amendment claim for excessive force.

### F. THE USE OF FORCE AGAINST PAXTON WILLIAMS VIOLATED IOWA LAW AND IS ASSAULT AND BATTERY.

As the Defendant has conceded, a police officer commits an assault under Iowa law if the peace officer does not reasonably believe that the particular force he used was necessary in the circumstances. (R. Doc. 31, p. 24). There is a question of material fact as to what a reasonable officer would believe in this circumstance. Roger Clark, an expert in police practices, has opined that it was not objectively reasonable force. (PSAMF ¶77). This alone prohibits summary judgment on this claim, and the motion should be denied on this ground.

### G. THE MALICIOUS PROSECUTION CLAIM RETAINS QUESTIONS OF FACT BECAUSE THERE WAS NO PROBABLE CAUSE AND THERE IS EVIDENCE OF MALICE.

Defendants claim that Williams cannot prevail on his malicious prosecution claim because there is no set of facts presented where a reasonable jury could determine there was no probable cause for the crime charged (element 4 of malicious prosecution) and no evidence of malice in bringing the prosecution (element 5). Defendants appear to concede that the remaining elements of malicious prosecution have all been met. (R. Doc. 31, p. 25).

But, as argued above, there was no probable cause for the crime charged – that is failure to disperse. Failure to disperse requires that a person is a participant in a riot or unlawful assembly *and* within hearing distance of a peace officer's order to disperse **and** refuses to obey police officer's order to disperse. Iowa Code § 723.3. These elements simply did not exist as applied to Williams. The fact that "many people were guilty of failure to disperse the night of June 1" as argued by the Defendants is of no consequence. It must be probable cause that *Paxton Williams* committed that crime. And the arresting officers, as well as Defendant Paulson,

11

had no evidence that Williams heard a lawful order to disperse and refused to obey it. In fact, Willaims was at his home, alone, when he was arrested. He was not given an order to disperse at his own home while he was alone, much less what he participating in a riot alone. He was told to "move," which is not an order to disperse, and he complied with it. He just couldn't move very far because when he stepped backwards even closer to the locked gate to his home, he was tackled and sprayed. And then, he was accused of fleeing because he had "moved" as instructed by law enforcement. The entire encounter took a few seconds.

In order to charge him with failure to disperse, Officer Paulson had to fabricate evidence against him that directly contradicted arresting officer reports, as well as the body camera footage. Once Officer Hedlund knew the complaint contained false information, he did nothing. And then, as a department, they tried to work behind the scenes to attack Paxton Williams's right to practice law. This is clear evidence of malice. And, the subsequent text messages by Officer Hedlund expressly laughing about the pain and suffering Williams had endured demonstrated even more malice. (PSAMF ¶64-65).

The motion for summary judgment should be denied on this ground.

### H. THERE IS A MATERIAL QUESTION OF FACT WHETHER DEFENDANTS RETALIATED AGAINST WILLIAMS AND WHETHER THERE WAS A CONSPIRACY BY THE CITY OF DES MOINES AND THE OTHER DEFENDANTS TO RETALIATE AGAINST HIM.

Williams has presented text messages that demonstrate there is a material question of fact whether he was retaliated against for his complaints. The number of participants in the text messages, the vulgarity directed at Williams by leadership within the Des Moines Police Department, and the direct threats to his law license show that, at the very least, there is a "possibility" that a jury could infer there was a meeting of the minds and an understanding

among the named, and unnamed, conspirators who work for the City of Des Moines to punish him for his complaints. *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). Defendant Robinson's intimidating phone call was, it turns out, only the tip of the iceberg. That phone call, of course, just happened to supposedly not be recorded in violation of routine practice. And, the call alone as detailed by Williams is sufficient to demonstrate unconstitutional retaliation.

The text messages sent to and from Officer Hedlund were about Paxton Williams specifically, out of hundreds, if not thousands, of protestors, and they began immediately in June of 2020 (PSAMF ¶ 68) and continued after Williams's criminal case was dismissed, and after he filed his civil petition in Polk County district court. (PSAMF ¶64-65). But Williams wasn't even one of the protestors who broke windows. He didn't assault an officer. He didn't speak at the protest. He didn't resist arrest. He didn't run. He didn't do anything that drew attention to himself to trigger these actions against him *except* file his complaint with the police department after he was sprayed in the face for no reason and then arrested and charged with a fabricated crime. His complaint was completely truthful. This demonstrates Williams was singled out because of the complaint he made, not for any other reason. He has satisfied all of the requirements of *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).

Not only has Williams properly supported the claim of retaliation as set forth in his complaint, Williams has demonstrated something even more sinister than even his complaint originally alleged. There was, and seemingly is, an active conspiracy to try to impact Williams's law license because he dared to complain about the police practices of the Des Moines Police Department after he was violently assaulted in front of his own home. He does not need to have sued each and every individual that participated in the conspiracy – he has identified several in his materials. It is sufficient for him to identify that there is a conspiracy, and that the named

individuals, including the City of Des Moines who employs all of them, intentionally retaliated against him.

And these actions by Des Moines' police department would chill not only any black man in his position, but would tend to chill any lawyer of any gender and any race. The fact that Williams filed a civil complaint regardless of his well-founded fear of the police after these encounters is not evidence that their attempts to intimidate him would not "chill a person of ordinary firmness" as the Defendants claim. (R. Doc. 31, p. 27). Such a standard would eliminate all civil actions seeking to stop retaliation from our police forces in this country. He has clearly met the standards to pursue these claims under *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).

This court must intervene here to stop this kind of action from the police. Summary judgment is not appropriate on these claims.

### I. THERE IS A MATERIAL QUESTION OF FACT ON WHETHER DEFENDANTS ENGAGED IN OUTRAGEOUS CONDUCT.

Defendants correctly concede that a claim for intentional infliction of emotional distress is made out when the defendant procured an arrest and ensuing charges knowingly based on false or fabricated evidence. (R. Doc. 31, p. 38). *See Akima v. Peca*, 2023 WL 348330, at *11 (E.D. Mich. Jan 20, 2023). Williams has presented facts that would support a jury finding that his arrest and charges were based on false and fabricated evidence designed to hide the fact that he was assaulted and arrested for "running his mouth," not for any other reason. On top of these facts, however, are also the facts demonstrated from the text messages. The conduct of these officers, taken in the light most favorable to Williams, and with all reasonable inferences, show that Williams was targeted that night for "running his mouth," pepper sprayed for no reason other than to cause him pain, and then subjected to years of retaliatory motives and actions by all

levels of the police department. His IIED claim should be presented to a jury because there are material questions of fact that support the claim.

In addition, there are questions of material fact on whether each of the named defendants' actions were "outrageous." A jury very well could find that the assault with spray for no reason, followed by fabrications to charge him with a crime, followed by actions that indicate an intent to attack his law license are "outrageous." This claim should go to a jury.

> **J. THERE ARE SEVERAL CLEARLY ESTABLISHED RIGHTS THAT WERE VIOLATED, AND OFFICER HEDLUND WAS THEN PROMOTED, GENERATING *MONELL* LIABILITY.**

The Defendant argues that there were no clearly established rights violated, eliminating *Monell* liability. As argued above, Plaintiff submits there were: the right to be free from arrest without probable cause under the Fourth Amendment, the right to be free from arrest for exercising the right to free speech under the First Amendment, and the right to be free from retaliation.

Officer Hedlund himself has been accused of, and reprimanded for, unlawful use of excessive force. (PSAMF ¶73). Hedlund was promoted, not reprimanded, after Williams filed his complaint against him. (PSAMF ¶88). Hedlund was actively involved in the text messages discussing the retaliation against Willaims with multiple city officials. Given the pervasive communications among the leadership of the department, these facts are sufficient to allege ratification of Hedlund's actions against Williams, generating *Monell* liability. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). A question of material fact remains on these matters, and giving Williams the benefit of all reasonable inferences that these communications demonstrate, Defendant's motion for summary judgment of Count VII of the second amended complaint should be denied.

### K. OFFICER HEDLUND IS NOT IMMUNE FROM LIABILITY BECAUSE HIS TORTS DID NOT HAPPEN DURING ANY "EMERGENCY".

Defendants attempt to claim that Officer Hedlund is immune from all of his torts for assaulting Williams, intentionally inflicting emotional distress against Williams, maliciously prosecuting Willaims, and falsely arresting Williams because he was "responding to an emergency." (R. Doc. 44, 31, p. 44). Not so.

First, even if the protests at the Capitol were an "emergency" under Iowa Code §670.4(1)(k), none of the torts pled here happened at the protest at the Capitol. The assault happened while Williams was alone in front of his home. There was no emergency there. The arrest happened at the same time – still no emergency in front of Williams's home. If anything, the assault and arrest prevented officers from responding to the purported emergency happening around them – that is the destruction of property that other people were doing that night, not Williams. And then the remaining torts happened over the subsequent days and months. Officer Hedlund lied in his report. He knew the complaint contained multiple false statements and did not correct it. He falsely claimed Williams was involved in a "riot." He testified Williams was "running away" after stating on a recording that he was not running away. He tried to impact Williams's law license. None of these actions were taken as part of the purported "emergency." The Defendants' attempt to expand Iowa code § 670.4(1)(k) to provide immunity to Defendant Hedlund should be promptly rejected.

## V. CONCLUSION.

This court should deny summary judgment on all of the federal constitutional claims presented, and on all of the state torts presented in this case.

Respectfully Submitted,

 /s/Angela L. Campbell
/s/Jacob M. Oeth
Angela L. Campbell AT# 0009086
Jacob M. Oeth AT#0013814
DICKEY, CAMPBELL & SAHAG LAW FIRM, P.L.C.
301 E. Walnut St., Suite 1
Des Moines, Iowa 50309
PHONE: 515.288.5008
FAX: 515.288.5010
E-MAIL:  angela@iowajustice.com
          jake@iowajustice.com
ATTORNEYS FOR PLAINTIFF

**Service to:**

Michelle Mackel-Wiederanders

Luke DeSmet

Assistant City Attorneys

mrmackel@dmgov.org

lmdesmet@dmgov.org

**ATTORNEYS FOR DEFENDANT**

PROOF OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon each of the attorneys of record, or the parties if unrepresented, at their respective addresses disclosed on the pleadings.

By: \_\_\_\_\_ U.S. Mail       \_\_\_\_\_ Fax
    \_\_\_\_\_ Courthouse Mail  \_\_\_\_\_ Hand delivered
    \_\_\_\_\_ Certified Mail    x   Other (electronic)

Signature: /s/Angela L. Campbell

Date: 8/3/23