UNITED STATES DISTRICT COURT IN AND FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| PAXTON WILLIAMS,<br>Plaintiff,<br><br>v.<br><br>JACOB HEDLUND, & TRUDY PAULSON, individually and in their official capacity; JEFF ROBINSON, individually and in his official capacity; DANA WINGERT, individually and in his official capacity; and CITY OF DES MOINES, IOWA, Defendants. | Case No. 4:22-cv-240<br><br>REPLY MEMORANDUM OF LAW IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT |

The Court should grant summary judgment to the Defendants on all claims. In reviewing Mr. Williams's resistance, even in the light most favorable to him, it is filled with opinion, speculation, and a number of factual misstatements. Some of the notable factual inaccuracies in Mr. Williams's filings include the following:

- Mr. Williams had committed no crimes.
    - Mr. Williams admits he was out of his residence after 9:00p.m. (Pl's Response to SUMF ¶63-66.) This was a violation of the Polk County curfew. (SUMF ¶9-10.)
    - Mr. Williams admits he was at the Capitol when tear gas was deployed. (Pl's Response to SUMF ¶66.) This shows he failed to disperse by failing to leave the Capitol after five dispersal orders were read. (SUMF ¶37-45.) Not leaving the Capitol after one dispersal order is a violation of the law.
- Mr. Williams was complying with officers' orders.
    - This is contradicted by the video record. Officer Hedlund's body camera video shows that Mr. Williams was willfully refusing to follow officers' orders to move until it was too late to do so. (Hedlund Video 5:25-6:00 App. 3.) The Court is not required to credit facts blatantly contradicted by the video record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).
- Mr. Williams was in a 'fenced-in area' of his residence.
    - Mr. Williams admits Officer Hedlund saw him on the sidewalk. (Pl's Response to SUMF ¶71.)
    - The area Mr. Williams was near is only fenced in the back. There is nothing to separate the area, in a heavily commercial area, from the sidewalk. There's no signage saying it is a private area. There's nothing there to prevent any person from walking into that area.[1]
- There was a conspiracy to attack Mr. Williams's law license.
    - There is no evidence *any* individual took *any* action to impact Mr. Williams's law license. No complaint was made. No suspension of the license occurred. There is no evidence anyone tried to do anything.
- Officer Hedlund had previously been disciplined for excessive force.
    - Officer Hedlund testified he had been investigated for excessive force but the claim was determined to not be founded. He was disciplined for a separate incident involving in-house horseplay rather than an interaction with the public. (Hedlund Depo. App. 187:5-188:22.)

---

[1] Note, at 5:06 into Hedlund's video, a person can be seen darting out of a nearby nook, wearing a helmet and moving quickly away from officers, demonstrating these areas were being "occupied".

1

These inaccuracies, and others discussed in the City's response to his statement of additional facts, undermine Williams's intrigue-laden arguments.

There was probable cause to arrest Mr. Williams for violation of the curfew because he was violating the curfew, on camera, for everyone to see. The fact that Officer Hedlund was not focused on the curfew at the time of arrest is irrelevant because qualified immunity is applicable if there was probable cause for any offense. *Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An arresting officer's] subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause."); *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021). Because there was probable cause to arrest Mr. Williams for the curfew violation, the arrest was lawful.

This Court already found that the curfew was a valid basis for arrest the same night under very similar circumstances in *Luong v. House*, No. 4:21-cv-00214, 2023 WL 2890196 (Iowa S.D. Apr. 11, 2023). Mr. Williams says that *Luong* "is easily distinguishable" but fails to explain what distinguishes it. The only possible distinction mentioned by Mr. Williams is that he was not on a sidewalk as the plaintiffs in *Luong* were, but that distinction fails. Mr. Williams has admitted that "Officer Hedlund observed Mr. Williams standing on the sidewalk yelling in the direction of officers." (Pl's Response to SUMF ¶71.) Mr. Williams was in a location easily accessible to unlawful assemblers. Given what Officer Hedlund knew about groups having moved in that direction from the Capitol, it was entirely reasonable, and accurate, for Officer Hedlund to have believed that Mr. Williams both had and *was* violating the curfew. That is one legitimate basis for Mr. Williams's arrest.

But, the arrest was also supported by probable cause to believe Mr. Williams had failed to disperse; which he had in fact done by failing to leave the Capitol after 5 dispersal orders were given before tear gas was deployed. Mr. Williams focuses too closely on the idea that he failed to disperse when Officer Hedlund approached him. While he certainly failed to comply with officers' orders at that time, he had failed to disperse earlier by not leaving the Capitol when dispersal announcements were made. Officer Hedlund had probable cause to believe this was true of Mr. Williams for all the reasons identified in section 4.2.2 of Defendants' summary judgment memorandum including that unlawfully assembled persons had just been at the location

2

Mr. Williams was in, Mr. Williams was dressed consistently with persons who had been unlawfully assembled—wearing safety goggles and mask, and he was confronting officers and failing to comply with their orders. The information Officer Hedlund possessed gave him ample probable cause to believe Mr. Williams had failed to disperse from the Capitol and none of Mr. Williams's arguments refute this rationale.

Mr. Williams also focuses heavily on a mischaracterized statement from Officer Hedlund taken out of context. Mr. Williams repeatedly asserts that Officer Hedlund's arrest resulted from his speech because Officer Hedlund told Mr. Williams "you wanted to run your mouth." However, this characterization ignores the context of the officer's statement that Mr. Williams admits occurred. The full statement reads very differently: "Mr. Williams asked why he was detained, and Officer Hedlund responded that 'I told you to leave, and you wanted to run your mouth.'" (Pl's Response to SUMF ¶91.) The full statement shows that Officer Hedlund was concerned not with what Mr. Williams was saying but his failure to comply with the repeated order to leave the area, and instead, engaged in confrontation with the officers. Rather than being an admission that Mr. Williams was arrested for an improper reason, it reinforces that Mr. Williams's conduct led to the arrest.

Mr. Williams also had time to retreat. He argues that officers gave him no chance to enter his home, but the video shows this is incorrect. Mr. Williams could have gone into his residence after he left the Capitol rather than staying in a publicly accessible area, and he wouldn't have come to officers' attention. Alternatively, when Officer Hedlund and others first told him to move, he could have gone into his residence and through the locked gate he complains he didn't have time to access and, again, would have avoided arrest. Mr. Williams knew that dispersal orders were given at the Capitol. It is clear from video that he is in the line of sight of a pack of officers walking down the street at approximately 5:21 of Hedlund's video. He appears to be facing toward officers. Officers begin telling him to move at approximately 5:33 on the video. Instead, he chose to stay put, confront officers, and refuse to leave until officers were close enough to make an arrest at 5:45 on the video. From the time it appears he could see officers approaching to when he finally took steps away in the face of arrest, he had 24 seconds to turn around and go into his gated area. It was his own choices that led to the arrest of Mr. Williams.

Mr. Williams's arguments also rely heavily on hindsight. Repeatedly, Mr. Williams argues that because Officer Hedlund later learned they were near Mr. Williams's residence, that Officer Hedlund later identified inaccuracies in the criminal complaint he didn't write, or that Officer Hedlund was later frustrated about the complaint against him that Officer Hedlund must have known the arrest was unlawful when made. This is exactly the type of hindsight analysis that qualified immunity does not use. *See Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012).

Mr. Williams's arguments also rely heavily on speculation and innuendo rather than evidence. For instance, there is a difference between an error and an intentional lie. However, Mr. Williams jumps from incorrect facts in the criminal complaint Officer Paulson drafted to 'Officer Paulson put intentional falsehoods in the criminal complaint.' Mr. Williams relies on mere speculation to claim that Officer Paulson knew information in the complaint was false as to him; there is no evidence of such. Mr. Williams has no evidence of Officer Paulson's intent because he failed to depose her but baldly imputes purposeful dishonesty anyway.

Mr. Williams makes similar leaps of imagination with regards to the text messages and conspiracies. He is correct that Officer Hedlund has mentioned him in text messages with four individuals. However, these are isolated discussions over the course of years. The discussion with Sgt. McKinney took place in June 2020 and McKinney merely asked what Mr. Williams's name was. The discussion with the former city attorney took place in October 2020. The exchange with Sgt. Herman took place in June 2022 and Hedlund communicated that he had been sued. The date of the communication with Sgt. Parizek is unclear. Four brief discussions of Mr. Williams separated by two years shows nothing other than, perhaps, that Officer Hedlund was frustrated at being sued and vented with colleagues. The text messages don't reflect organization, they don't reflect plans, they don't reflect coordination. There is no evidence of action by any of the individuals involved in the text messages to do *anything*. It is only because Mr. Williams needs to conjure evidence of a conspiracy to exist that he characterizes the messages as such, but that is not a reasonable inference from these sporadic exchanges.

It is also notable that none of these text messages are communications *among* Defendants in this case.

4

Mr. Williams names Officers Hedlund and Paulson, Sgt. Robinson, and Chief Wingert as defendants. The record contains no evidence of communications among them to even discuss Mr. Williams let alone conspire against him. Instead, Mr. Williams reaches for communications Officer Hedlund had with unrelated coworkers to speculate about nefarious actions there is no evidence ever occurred. Mr. Williams has failed to show the Defendants did anything to conspire with anyone, let alone each other, to harm Mr. Williams. The text messages also fail to show ratification as Mr. Williams claims because none of the text messages are with Officer Hedlund's supervisors let alone high-ranking Police Department officers like chiefs, majors, or even captains. The text messages can't ratify any conduct on behalf of the City because no one involved in the texts has that kind of decision-making authority.

Finally, Mr. Williams views the emergency response immunity under Iowa Code section 670.4(1)(k) too narrowly. The Iowa Supreme Court has been clear, immunity applies to any action taken "in connection with an emergency response" and does not end even if the emergency ends. Iowa Code § 670.4(1)(k); *Adams v. City of Des Moines*, 629 N.W.2d 367, 370-71 (Iowa 2001). The argument that the immunity can't apply because there was no emergency at the time of the arrest, which the City does not concede, misunderstands the scope of the immunity. As long as the action taken is in connection with an emergency response, the immunity applies. Officer Hedlund's actions were in connection, and directly continued from, the response to the emergency at the Iowa State Capitol. As such, the Court should grant immunity to the state tort claims against Officer Hedlund in counts 10-13.

For all the reasons stated herein, the Defendants respectfully request the court grant summary judgment in their favor of all counts.

Respectfully submitted,

   */s/ Michelle R. Mackel-Wiederanders*
Michelle R. Mackel-Wiederanders   AT0004790
   */s/ Luke DeSmet*
Luke DeSmet   AT0010219
400 Robert D. Ray Dr.
Des Moines, IA 50309-1891
Telephone: (515) 283-4537
E-mail: MRMackel@dmgov.org/ LMDesmet@dmgov.org